# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | Susan E. Cox |
|---|---|---|---|
| **CASE NUMBER** | 08 C 3584 | **DATE** | 4/23/2009 |
| **CASE TITLE** | Technology Development vs. Comcast | | |

**DOCKET ENTRY TEXT**

Motion hearing held. Plaintiff's motion for protective order (29) and defendant's motion for protective order (32) are granted in part and denied in part, as outlined below. The parties are to review the Court's Standing Order on protective orders and comply with the necessary language required by the Seventh Circuit. The parties are to then submit an agreed protective order, that includes the language outlined in the Court's ruling, to the Court's Proposed Order Box on or before 4/30/09. Status hearing set for 5/20/09 at 9:30 a.m.

■[ For further details see text below.]                                                         Docketing to mail notices.

00:10

## STATEMENT

Plaintiff Technology Development and Licensing, LLC ("TDL") and Defendant Comcast Corporation ("Comcast") both seek protective orders to maintain the confidentiality of certain technical documents that are subject to discovery in this patent infringement action [dkts 29 & 32]. Some of these documents, which are designated Attorneys' Eyes Only ("AEO"), describe non-public technology employed by Comcast in its cable systems. In its complaint, TDL alleges that the Comcast technology outlined in the AEO documents infringes upon its '952 patent, which describes a television control system by which viewers can designate favorite channel features.

Comcast argues that an inadequate prosecution bar on TDL's outside counsel, Niro Scavone ("Niro"), will expose the technology described in the AEO documents to attack in subsequent patent prosecutions brought by Niro. TDL, on the other hand, views Comcast's proposed protective order as overly broad and restrictive.

The two contested issues in the protective orders are: 1) whether Niro attorneys who have access to AEO documents should be allowed to participate in the reexamination of TDL's '952 patent, and 2) what additional restrictions should be placed upon Niro attorneys who have access to the AEO documents.

Reexamination

Comcast argues that the protective order should bar Niro attorneys who have access to the AEO documents from participating in the reexamination of TDL's '952 patent. In crafting a protective order, the Court must look to the "factual circumstances surrounding each individual counsel's activities, association, and relationship with a party" in order to "balance the risk of inadvertent disclosure of trade secrets to competitors against the risk of impairing the process of litigation by denying access."[1]

The cases that Comcasts cites to support a bar on Niro's involvement in the rexamination process are not really persuasive. Although the court in *Visto Corporation v. Seven Networks, Inc.,* concluded that the protective order in that case should encompass reexaminations "even if the result of the reexamination is narrower claim

**STATEMENT**

language," the court did not explain its reasons for doing so.[2] The *Visto* court did not balance the risk of disclosure against the risk of impairing the process of litigation, nor did it look at the factual circumstances surrounding the parties. Similarly, the courts in *Wrigley Jr. Company v. Cadbury Adams USA, LLC* and *Silicon Graphics v. ATI Technologies, Inc.*, simply included reexaminations in their respective protective orders without justifying the inclusion.[3]

By contrast, the court in *Hochstein v. Microsoft Corporation* recognized that the "[d]efendant's confidential information is basically irrelevant to the reexamination [since] it is undisputed that the reexamination only involves the patent and the prior art."[4] As such, the "[d]efendant was unable to specify what confidential information was at risk of disclosure, or the manner in which [the plaintiff's] litigation counsel may use such information during the reexamination."[5] Similarly, Comcast is unable to explain how Niro would use Comcast's confidential AEO documents during a reexamination proceeding. Consequently, the protective order will not bar Niro from participating in the reexamination of TDL's '952 patent.

Additional Restrictions

Comcast also asserts that the protective order should bar Niro attorneys who have access to the AEO documents from prosecuting patents related to cable television for a year after the conclusion of this action. Comcast urges that in the absence of such a restriction, Niro would likely inadvertently use its confidential knowledge of Comcast's systems to shape patents that may then be asserted against those systems.

To guard against this possibility, the Court must again "balance the risk of inadvertent disclosure of trade secrets to competitors against the risk of impairing the process of litigation by denying access."[6] A critical balancing factor is the determination of whether Niro engages in the "competitive decisionmaking" process of Comcast's competitors, such that counsel is involved "in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."[7] The court in *Cummins-Allison Corp. v. Glory Limited*, noted that a "number of courts have held that advice by counsel in prosecuting patent applications falls within the scope of 'competitive decisionmaking.'"[8]

TDL argues that the protective order's restrictions on Niro should be limited in scope to the parties and the subject matter of this action. Based on less restrictive protective orders accepted by Comcast in prior cases involving different parties, TDL concludes that the protective order in this action should only bar Niro from prosecuting patents on behalf of TDL.

Because the Court must examine the "factual circumstances" of this particular case, however, prior protective orders stipulated to by Comcast are not dispositive here.[9] The prior orders referenced by TDL do not explain the reasons underlying Comcast's agreement to less restrictive measures. By contrast, Comcast asserts here, and TDL does not deny, Niro's intent to prosecute patents on behalf of other clients relating to the subject matter of this action. In this capacity, Niro would be providing "advice by counsel in prosecuting patent applications," and would, thus, "[fall] within the scope of 'competitive decisionmaking.'"[10]

The focus of a protective order is not only limited to inadvertent disclosures between parties within a particular action, but also includes disclosures to other competitors resulting from counsel's access to confidential material. In the present case, the harm to Comcast would arise from Niro's inadvertent use of confidential information in shaping related patent applications for other clients. As such, the protective order's restriction on Niro's patent prosecution activities should not be limited to TDL's patents, but should also include all patents relating to the subject matter of this action.

TDL correctly argues, however, that Comcast's proposed protective order is overly broad, in that it purports to apply to all "patents related to cable television." In balancing the risks, the Court must narrowly tailor its order to limit the threat of inadvertent disclosure while minimizing the burden upon the restricted party.

**STATEMENT**

Comcast asserts in its brief that the protective order should be defined by the subject matter of the action, but employs a scope that is far beyond the contours of this action. Adopting the language of *Cummins*, the order will only bar the prosecution of patents relating to the "subject matter of the patents-in-suit."[11]

    Accordingly, the relevant portion of the protective order will read: Individual attorneys who receive technical information designated Attorneys' Eyes Only may not prosecute or assist in the prosecution of patents relating to the subject matter of the patents-in-suit during the pendency of this litigation, or for a year after it concludes.

1. *U.S. Steel v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984); *Interactive Coupon Marketing Group, Inc. v. H.O.T.! Coupons, LLC*, No. 98 C 7408, 1999 WL 618969 at *2 (N.D.Ill. Aug. 9, 1999).

2. No. 2:03-cv-333-TJW, 2006 WL3741891 at *7 (E.D. Tex. Dec. 19, 2006).

3. *W.M. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, No. 04 C 0346, 2005 WL 146967 (N.D. Ill. Jan. 21, 2005); *Silicon Graphics, Inc. v. ATI Techs., Inc.*, No. D06-C-611-C, 2007 WL 5433478 (W.D. Wis. Aug. 8, 2007).

4. No. 04-73071, 2008 WL 4387594 at *3 (E.D.Mich. 2008).

5. *Id.*

6. *Interactive Coupon Marketing Group, Inc.*, 1999 WL 618969 at *2.

7. *U.S. Steel,* 730 F.2d at 1468.

8. No. 02 C 7008, 2003 U.S. Dist. LEXIS 23653 at *17-18 (Jan. 2, 2004).

9. *See U.S. Steel,* 730 F.2d at 1468.

10. *Cummins*, 2003 U.S. Dist. LEXIS at *17-18.

11. *Id.* at *35.